# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

MAXWELL ELLIOTT, individually
and on behalf of all others similarly situated,

               Plaintiff,

v.

MISSISSIPPI TORNADO ALLEY, LLC,

               Defendant.

## CLASS ACTION COMPLAINT

Plaintiff, Maxwell Elliott, brings this class action complaint against Mississippi Tornado Alley, LLC (hereinafter "FastPeopleSearch" or "Defendant"), a data broker operating the publicly accessible online directory, fastpeoplesearch.com. This action asserts violations of Colorado's "Prevention of Telemarketing Fraud Act" (PTFA), Colo. Rev. Stat. § 6-1-304, *et seq*. These allegations are grounded in counsel's investigation and are presented upon information and belief, except for those directly concerning Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This complaint seeks redress for FastPeopleSearch's pervasive practice of compiling and commercially disseminating the cellular telephone numbers of Colorado residents without their explicit, affirmative consent. This conduct directly contravenes the letter and spirit of the PTFA, a vital piece of consumer legislation designed to protect the privacy of individuals, particularly regarding their mobile phone numbers, which are widely regarded as personal and private communication channels.

2. The Colorado General Assembly enacted the PTFA with a clear legislative declaration recognizing the rapid increase in commercial telephone solicitation and the unique risks and potential for abuse it presents. The legislature found that "widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest." Colo. Rev. Stat. § 6-1-301.

3. To address these concerns, an amendment to the PTFA, HB05-1288, was signed into law on May 27, 2005, explicitly prohibiting the commercial listing of a cell phone number in a directory without the owner's permission, effective September 1, 2005. This amendment aimed

2

at protecting individuals from the misappropriation of their personal information and to uphold privacy in an increasingly digital world. Specifically, Colo. Rev. Stat. § 6-1-304(4) states:

(a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:

(I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

4. Despite this clear statutory prohibition, FastPeopleSearch operates a website, fastpeoplesearch.com, which functions as a data aggregator, openly collecting and listing personal information, including phone numbers, addresses, and relatives, without explicit consent. This data, sourced from various public records and third-party data brokers, is made readily available to anyone with internet access. Plaintiff contends that FastPeopleSearch monetizes this personal data, including the cell phone numbers of Colorado residents, through its publicly accessible directory, thereby profiting from the unauthorized disclosure of private information.

5. This alleged conduct is not merely a technical violation; it exposes individuals to significant risks. The Federal Trade Commission ("FTC") has long warned about the potential dangers associated with data brokers, including the facilitation of harassment, stalking, identity theft, and vulnerability to fraudulent schemes.[1] FastPeopleSearch's readily accessible compilation of personal data, including cell phone numbers, creates a fertile ground for malicious actors to exploit this information for harmful purposes, such as scams, phishing, and doxxing. This is particularly concerning for vulnerable populations, such as the elderly, who are frequently targeted by telemarketing fraud.

---

[1] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf

6. Plaintiff brings this action to compel FastPeopleSearch to cease its unlawful practices, protect the privacy rights of Colorado cell phone users, and recover statutory damages provided by the PTFA.

## PARTIES

7. Plaintiff, Maxwell Elliott, is, and has been at all relevant times, a resident of Mesa County, Colorado. Plaintiff's cellular telephone number was listed by Defendant FastPeopleSearch in its directory, available at fastpeoplesearch.com, for commercial purposes. Defendant never requested, and Plaintiff never provided, affirmative consent, through written, oral, or electronic means, for such listing. In fact, Plaintiff has no relationship with Defendant whatsoever and had no reasonable ability to discover Defendant's use of his personal information until shortly before filing this suit.

8. Defendant Mississippi Tornado Alley, LLC is the entity operating the website fastpeoplesearch.com. Defendant is a limited liability company that maintains its principal place of business in Sacramento, California.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

10. This Court has personal jurisdiction over Defendant because it has purposefully directed its business activities toward Colorado residents. Through the operation of the FastPeopleSearch.com website, Defendant routinely collects, publishes, and monetizes the personal information—including mobile phone numbers—of individuals known to reside in

Colorado. Defendant's conduct is not passive: its platform is interactive, regularly accessed by users in Colorado, and provides detailed personal data about Coloradans to third parties for a commercial purpose. By listing Colorado residents' personal information in a publicly accessible online directory, without consent, and for profit, Defendant has availed itself of the privilege of conducting business in Colorado and has established sufficient minimum contacts with the state. Additionally, Defendant's actions give rise to specific jurisdiction because the claims in this case directly relate to and arise from the unauthorized publication of Plaintiff's and other Colorado residents' information on Defendant's website. Defendant knew or should have known that publishing such data would cause harm to individuals within Colorado. Exercising jurisdiction over Defendant in this forum comports with traditional notions of fair play and substantial justice and is consistent with due process under the U.S. Constitution.

11. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiff resides in Colorado and suffered the alleged injury—namely, the unauthorized and unlawful listing of his personal cellular phone number for commercial use—while residing in Colorado. The Defendant knowingly published and monetized the personal data of Colorado residents through its website, with full awareness that its conduct would have legal and practical consequences within the state. As a result, Colorado is not only the locus of the harm, but also the forum with the most significant interest in adjudicating violations of its statutory privacy laws.

## FACTUAL BACKGROUND

### A. Overview of the FastPeopleSearch Directory

12.     FastPeopleSearch operates as a data broker, gathering and then re-selling or sharing consumers' personal information. It provides online "people search" services by compiling vast amounts of information about individuals from diverse sources, including public records, business records, telecommunications companies, social media, and other data brokers.

13.     The website, fastpeoplesearch.com, functions as a public directory, allowing anyone on the internet to search for individuals by name, phone number, or address. For example, below is a screenshot of the search feature on the homepage of the FastPeopleSearch website:



14. Upon a search, the site provides a free report, which can include the subject's full name, age, current and former addresses, all associated phone numbers (personal and professional), aliases, and relatives. Below is an example of one of Defendant's free reports:



15. While basic information is free, the site implicitly encourages deeper engagement or perhaps relies on related revenue streams by allowing users to sign up for a "Full Background Search" provided by a sponsored affiliated website as shown below:

**Full Background Report** (Sponsored)

- Arrests & Criminal Records
- Warrants & Police Records
- Felonies & Misdemeanors
- Nationwide Court Records
- Registered Sex Offender Check
- Bankruptcies, Judgements, Liens
- Marriage & Divorce Records
- Evictions & Foreclosures
- Properties & Assets
- Business Records
- Professional Licenses
- Social Media Records

**VIEW FULL BACKGROUND REPORT »**

16. Defendant intentionally lists the cell phone numbers of Colorado residents. For example, in the "About Us" section of Defendant's website, Defendant states that its data is "updated regularly" and "includes landline, *cell phone*, business and residential phone numbers, as well as information for addresses and people all across the U.S."[2] (emphasis added).

17. Defendant explicitly markets its platform as a resource for locating individuals by phone number, including mobile numbers. On its homepage, Defendant includes a "Reverse Phone Lookup" feature, which allows users to enter a number—including mobile numbers—and view personal information tied to that number, such as full name, address history, and known associates. This confirms Defendant's knowledge that it is publishing cell phone data and reinforces that such data is central to the site's commercial function.

18. The collection and dissemination of these personal details, including cell phone numbers, serves a commercial purpose for FastPeopleSearch. Even without a direct subscription

---

[2] https://www.fastpeoplesearch.com/

model visible on every page, data brokers like FastPeopleSearch generate income by selling access to and information about private citizens. This inherent commercial value of the data collected underscores the violation of the PTFA when consent is not obtained. Moreover, FastPeopleSearch generates revenue from advertisements and links to sponsored websites through its public dissemination of personal information.

19. Defendant profits from its data publishing activities through multiple channels, including advertising revenue, lead generation for background check services, traffic referrals to affiliated paid-report providers, and potential licensing of compiled consumer data to other entities. These monetization strategies underscore the "commercial purpose" required under the PTFA and belie any claim that the website merely provides "free" services.

B. **FastPeopleSearch's Conduct Harms Coloradans**

20. FastPeopleSearch's practices inflict tangible harm upon Colorado residents by undermining their privacy rights and exposing them to significant risks. The commercial value of consumer data is well-established, with the FTC recognizing that "data is currency" and larger datasets yield greater potential for analysis and profit.[3] By listing cell phone numbers without consent, FastPeopleSearch deprives Coloradans of the control over their personal data and its inherent economic value. Consumers are increasingly aware of this value and are willing to pay a premium for services that prioritize data protection.

21. Beyond the economic deprivation of data value, the public listing of personal information, especially cell phone numbers, on people search sites like FastPeopleSearch, poses serious safety and security threats. Such sites provide a "wealth of information that can be

---

[3] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf

exploited by malicious actors."[4] The aggregation of personal data makes it easier for cybercriminals to "craft convincing scams or carry out identity theft."[5] This practice puts "almost anyone within the reach of fraudulent telemarketers" and other wrongdoers.[6] The risks include increased exposure to unsolicited contact, harassment, phishing attempts, doxxing, and a general reduction in personal online privacy.

22. The vulnerability of certain demographics is particularly concerning. Elderly individuals, for instance, are frequently targeted by fraudulent telemarketers, and the readily available contact information exacerbates this risk. Once an individual is identified as susceptible to a certain type of spam, they may be subjected to a barrage of similar fraudulent offers.

23. FastPeopleSearch's collection and display of personal information without consent directly contributes to these harms, frustrating the legislative intent of the PTFA to safeguard privacy and protect consumers from telemarketing fraud.

## CLASS ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in Colorado whose cellular telephone numbers were listed on Defendant's website, www.fastpeoplesearch.com, during the applicable statute of limitations.

25. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

---

[4] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[5] *Id*.

[6] http://www.nytimes.com/2007/05/20/business/20tele.html.

10

26. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

27. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

28. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been injured by Defendant's practices.

29. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    A. whether Defendant collected and publicly disseminated Plaintiff's and the Class's cellular telephone numbers;

    B. whether Defendant unlawfully disclosed and continues to disclose its users' cellular telephone numbers in violation of the PTFA;

    C. whether Defendant disclosed Plaintiff's and the Class's cellular telephone numbers without consent;

30. Typicality: Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, had his cellular telephone number collected and disclosed by Defendant, without his consent.

31. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the PTFA claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

32. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

B. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

C. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

D. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

E.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

F.      This class action will assure uniformity of decisions among Class Members;

G.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

H.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

33.      Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

34.      Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

<b><u>COUNT I</u></b><br><b><u>VIOLATION OF THE PREVENTION OF TELEMARKETING FRAUD ACT</u></b><br><b><u>Colo. Rev. Stat. § 6-1-304, <i>et seq.</i></u></b>

35.      Plaintiff incorporates the foregoing allegations as if fully set forth herein. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

36.      Colo. Rev. Stat. § 6-1-304(4)(a) explicitly states that "[o]n or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number

has been listed has given affirmative consent, through written, oral, or electronic means, to such listing."

37. Defendant FastPeopleSearch has failed to comply with this PTFA mandate. FastPeopleSearch knowingly lists Coloradans' cell phone numbers. The website fastpeoplesearch.com clearly provides users with the ability to search for individuals and obtain phone numbers as part of its "free search" service. The very nature of the site, which aggregates and displays this data, demonstrates knowledge of the presence of cell phone numbers within its database.

38. FastPeopleSearch's website, fastpeoplesearch.com, undeniably functions as a "directory." As defined, a directory is an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area."[7] Defendant's operations fully align with this definition, as it allows users to search for names, addresses, and phone numbers in a structured manner.

39. Defendant engages in this conduct for a commercial purpose. FastPeopleSearch's business model is based on collecting and providing access to personal data, a commodity with inherent monetary value. Even if basic searches are "free," the site serves as a conduit for information that can be monetized directly or indirectly, through advertising, lead generation, or by encouraging users to seek more comprehensive paid reports.

40. Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing." Instead, FastPeopleSearch compiles and lists the cell phone numbers of Coloradans with whom it has no prior engagement, no connection, and

---

[7] *See* Oxford Learner's Dictionary, *Directory*, https://www.oxfordlearnersdictionaries.com/us/definition/english/directory.33

who are often unaware of the site's existence or its unauthorized publication of their personal information.

41.     Defendant's misappropriation of Class Members' personal data, including its economic value, has directly infringed upon Class Members' PTFA privacy rights. This deprivation extends to the real, quantifiable value of such data. Furthermore, it has exposed Class Members to elevated and unnecessary risks of stalking, harassment, scams, identity theft, and unwanted telemarketing solicitations.

42.     Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to comply with the PTFA; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

   a. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel.

   b. Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I).

   c. Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first

        offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense.

    d.    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA.

    e.    Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

    f.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable.

    g.    Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable.

Dated: August 1, 2025

        RESPECTFULLY SUBMITTED,

        CROSNER LEGAL, P.C.

        By:    */s/ Michael T. Houchin*
                MICHAEL T. HOUCHIN

        9440 Santa Monica Blvd. Suite 301
        Beverly Hills, CA 90210
        Tel: (866) 276-7637
        Fax: (310) 510-6429
        mhouchin@crosnerlegal.com
        *Attorneys for Plaintiff and the Proposed Class*